Clay Anthony FORD, Plaintiff–Appellee,

v.

Larry NORRIS, Defendant–Appellant.

No. 94–3469.

United States Court of Appeals,
Eighth Circuit.

Submitted April 10, 1995.

Decided Oct. 6, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 21, 1995.

Darnisa E. Johnson, Assistant Attorney General, Little Rock, Arkansas (Pamela Rumpz, on the brief), for appellant.

Timothy O. Dudley, Little Rock, Arkansas (Rickey Hicks and Brian Ratcliff, on the brief), for appellee.

Before MAGILL and HANSEN, Circuit Judges, and GOLDBERG,* Judge.

HANSEN, Circuit Judge.

The Director of the Arkansas Department of Corrections appeals from a district court [1]

---

* The HONORABLE RICHARD W. GOLDBERG, Judge, United States Court of International Trade, sitting by designation.

1. The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

order granting a writ of habeas corpus under 28 U.S.C. § 2254 to Clay Anthony Ford, who was convicted of capital murder and sentenced to death. The district court set aside Ford's conviction because the prosecutor in Ford's case exercised peremptory strikes in a racially discriminatory fashion. *Ford v. Lockhart,* 861 F.Supp. 1447 (E.D.Ark.1994). We affirm.

## I.

Ford, who is black, was charged with capital murder under Arkansas law for shooting a white Arkansas State Trooper. During jury selection, the trial court excused two black venirepersons for cause and the prosecutor used his peremptory challenges to strike all of the remaining five black venirepersons, three of whom would have been jurors and two of whom would have been alternates. Ford's counsel moved to quash the jury panel on the basis that the prosecution was exercising its peremptory challenges in an effort to systematically exclude black jurors. The trial court overruled the motion. An all-white jury later found Ford guilty of capital murder and sentenced him to death by electrocution.

On direct appeal, the Supreme Court of Arkansas affirmed Ford's conviction and death sentence and rejected, inter alia, Ford's claim that the prosecutor exercised his peremptory strikes in an effort to exclude black jurors. *Ford v. State,* 276 Ark. 98, 633 S.W.2d 3, 6–7 (1982). The Supreme Court of the United States denied certiorari. *Ford v. Arkansas,* 459 U.S. 1022, 103 S.Ct. 389, 74 L.Ed.2d 519 (1982). Ford's subsequent petition and an amended petition for postconviction relief were denied by the Supreme Court

of Arkansas in unpublished per curiam orders on December 20, 1982, and December 27, 1982.

On December 29, 1982, Ford filed this petition for a writ of habeas corpus. Ford subsequently filed an amended petition on January 27, 1983, and a second amended petition on May 1, 1989. One of the grounds Ford asserted for relief in his second amended petition was that he was denied his constitutional right to have a "Racially Unbiased, 'Representative Cross–Section of the Community'" sit as the trier of facts in his case because the prosecutor exercised peremptory strikes in a racially discriminatory fashion. (Appellant's App. at 141–42.) Ford alleged that "[b]lacks have been systematically excluded from jury panels in Chickasawba District of Mississippi County for the past ten years" and that the prosecutor in his case "has a history and practice of using his peremptory challenges to systematically exclude black persons from trial juries." (*Id.* at 142.) The district court granted Ford relief on this claim, holding that the record established the prosecutor's conduct violated *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). *Ford,* 861 F.Supp. at 1468. The court vacated Ford's conviction and sentence and ordered Ford released unless the State commences proceedings to retry him within 120 days. *Id.* at 1470.[2] The Director of the Arkansas Department of Corrections (State) appeals.

## II.

### A.

■ As an initial matter, the State contends that Ford's *Swain* claim is procedurally defaulted[3] and that we therefore may not

---

**2.** The district court also vacated Ford's death sentence on two additional grounds: (1) Ford's counsel rendered ineffective assistance at sentencing, *id.* at 1458, and (2) the admission of Ford's nonviolent felonies at sentencing deprived Ford of his right to a fair hearing, *id.* at 1470. Given our disposition of the *Swain* issue in this case, we decline to address these additional grounds.

**3.** The State does not outline with specificity why Ford's *Swain* claim is procedurally defaulted, other than to make the bare assertion that it was never presented to the Supreme Court of Arkansas. We assume that the State is arguing that Ford never presented this claim to the Supreme Court of Arkansas in his postconviction action because the Court clearly ruled in Ford's direct appeal that the prosecutor had not exercised his peremptory strikes in a racially discriminatory

address the merits of the claim unless Ford establishes cause and prejudice to overcome the default. The State never raised this issue in the district court or in its brief on appeal; however, prior to oral argument it submitted a citation and argument on this claim pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure and presented further argument on the issue during rebuttal at oral argument. The State contends that under *Sochor v. Florida*, 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992), a state procedural default is a jurisdictional issue which may be raised at any time during litigation, and therefore the issue is properly before us.

The State relies on *Sochor*'s language that the Supreme Court lacks "jurisdiction to review a state court's resolution of an issue of federal law if the state court's decision rests on an adequate and independent state ground." *Id.* at 533, 112 S.Ct. at 2119. However, *Sochor* was a direct review case under 28 U.S.C. § 1257. "In the context of direct review of a state court judgment [under § 1257], the independent and adequate state ground doctrine *is jurisdictional.*" *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991) (emphasis added). In 28 U.S.C. § 2254 habeas cases, however, the Supreme Court has not intimated that the existence of an independent and adequate state law ground presents a jurisdictional issue. To the contrary, in *Coleman*, the Court clearly states two exceptions which allow federal habeas review of claims barred by an independent and adequate state rule:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims

will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565. This procedural default rule, with the above outlined exceptions, is grounded not upon principles of jurisdiction but upon "respect" for state procedural rules. *Id.* at 751, 111 S.Ct. at 2565. *See also Miller v. Lockhart*, 65 F.3d 676, 680 (8th Cir.1995) (rejecting argument that state procedural bars cannot be waived because they are jurisdictional); *Doe v. United States*, 51 F.3d 693, 698–99 (7th Cir.1995) ("procedural default is not a jurisdictional defect"), *petition for cert. filed*, (U.S. July 3, 1995) (No. 95–5095); *Washington v. James*, 996 F.2d 1442, 1447 (2d Cir. 1993) ("A procedural default in state court is not a jurisdictional bar in federal court."), *cert. denied*, —— U.S. ——, 114 S.Ct. 895, 127 L.Ed.2d 87 (1994); *Hardiman v. Reynolds*, 971 F.2d 500, 503 (10th Cir.1992) ("In a § 2254 habeas action, state procedural default is not a jurisdictional defense."). Thus, we find *Sochor* to be inapplicable and reject the State's contention that a state procedural default is a jurisdictional issue.

Given this conclusion, our result on this issue is governed by *Lawrence v. Armontrout*, 31 F.3d 662, 666 (8th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1124, 130 L.Ed.2d 1087 (1995). There we stated that the "State must raise procedural bar issues [in the district court], or they are waived." *Id. See also Miller*, at 680 (procedural default must be raised in district court or it is waived). "This approach is consistent with our general requirement that issues first be raised in the district court." *Lawrence*, 31 F.3d at 666. The State failed to raise procedural default in the district court, the issue is waived, and accordingly, we proceed to the merits of Ford's *Swain* claim.

**B.**

■ The State challenges the district court's conclusion that Ford has established a *Swain* violation.[4] In *Swain*, the Supreme

---

manner in violation of *Swain*. *See Ford*, 633 S.W.2d at 6–7. Moreover, a review of Ford's initial and amended postconviction petitions reveals that he did not raise this issue in those proceedings.

4. Because Ford's conviction became final prior to the Supreme Court's decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and because *Batson* does not apply retroactively on collateral review, *Allen v.*

Court held that "a State's purposeful or deliberate denial to Negroes on account of race of participation as jurors in the administration of justice violates the equal protection clause." *Swain*, 380 U.S. at 203–04, 85 S.Ct. at 826. In order to make out a claim under *Swain*, the claimant must show that:

> the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries....

*Id.* at 223, 85 S.Ct. at 837. *Swain* prohibits a prosecutor from using peremptory challenges to exclude blacks from the jury "for reasons wholly unrelated to the outcome of the particular case on trial." *Id.* at 224, 85 S.Ct. at 838. However, to establish a *Swain* violation, the claimant must offer proof that the prosecutor has excluded black jurors in a series of cases, *id.* at 223–28, 85 S.Ct. at 837–41; it is insufficient to offer evidence of the prosecutor's use of peremptory challenges at the claimant's trial alone. *Id.* at 221–22, 85 S.Ct. at 836–37.

■ The district court held that "Ford has established that the prosecutor has consistently and systematically excluded African–Americans from participating as jurors through the use of peremptory challenges." *Ford,* 861 F.Supp. at 1468. The parties in this case stipulated that the record from another habeas case that was pending before the district court, *Miller v. Lockhart,* 861 F.Supp. 1425 (E.D.Ark.1994), would be incorporated into the record here (and vice versa, i.e., the record from this case was incorporated into *Miller*). The two cases involved the same prosecutor and both presented *Swain* issues. In reaching its conclusion in Ford's case, the district court extensively quoted from its findings in *Miller,* recounting the statistical evidence and affidavits from local attorneys in the record. *Id.* at 1466–68.

The court found this to be convincing evidence that the prosecutor systematically excluded blacks from juries through use of the peremptory challenge. *Ford,* 861 F.Supp. at 1468. The State challenges this conclusion, contending that the record evidence is insufficient to satisfy *Swain*'s exacting proof requirements. We disagree.

Another panel of this court recently affirmed the district court's judgment in *Miller,* concluding that the prosecutor " 'systematically excluded blacks from petit juries over a period of time,' " in violation of *Swain. Miller,* at 681 (quoting *Garrett v. Morris,* 815 F.2d 509, 511 (8th Cir.), *cert. denied,* 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 191 (1987)).[5] We placed significant reliance on testimony from local attorneys who stated (either by way of affidavit or testimony at the habeas hearing) that this particular prosecutor routinely used his peremptory challenges to strike as many black venirepersons as he could. *Id.* We also found persuasive the extensive statistical data submitted by Miller which illustrated a direct relationship between the number of black venirepersons on the panel and the number of challenges the prosecutor would make to black venirepersons. *Id.* at 680–81.

Although our result is in some measure informed by *Miller,* given that its record is a part of ours, our independent review of the record in this case compels us to reach the same conclusion. The overwhelming record evidence, which is extensively outlined in the *Miller* opinion, *see Miller* at 680–81, and in the district court's two decisions, *see Miller,* 861 F.Supp. at 1444–47, and *Ford,* 861 F.Supp. at 1466–68, and which we need not recite here again, provides convincing proof that the prosecutor routinely attempted to pervert the peremptory challenge system by using it to exclude black venirepersons for reasons wholly unrelated to the trial. A habeas petitioner asserting a *Swain* violation "is not required to show that the prosecutor *always* struck every black venireman offered to him ... but the facts must manifestly

---

*Hardy,* 478 U.S. 255, 261, 106 S.Ct. 2878, 2881, 92 L.Ed.2d 199 (1986), the district court, and this court, must analyze Ford's claim under the *Swain* standard.

**5.** In *Miller,* the prosecutor used all ten of his peremptory challenges to strike black venirepersons. *Id.* at 681.

.

show an intent on the part of the prosecutor to disenfranchise blacks...." *Willis v. Zant,* 720 F.2d 1212, 1220 (11th Cir.1983), *cert. denied,* 467 U.S. 1256, 104 S.Ct. 3546, 3548, 82 L.Ed.2d 849, 851 (1984) (internal citation omitted). We also remain mindful of the trial record in this case, in which the prosecutor used five peremptory challenges to strike every black venireperson who was called to the jury box to serve. Thus, given this record, we agree with the *Miller* court and the district court that the record establishes an equal protection violation because the prosecutor systematically, in a series of cases, excluded blacks from the jury solely because of race.[6]

■ Apart from this conclusion, we find the record supports the second basis upon which a *Swain* violation can be found: the prosecutor's proffered reasons for excluding at least two black venirepersons in this case were a mere pretext for racial discrimination. *Swain* holds that a presumption exists that the prosecutor is using peremptory challenges "to obtain a fair and impartial jury to try the case before the court," and therefore, examination of the prosecutor's reasons for exercising challenges in any particular case is not required. 380 U.S. at 222, 85 S.Ct. at 837. An exception exists, however, in the following situations:

> [W]here, as here, the prosecutor volunteers the reasons for his actions and makes them part of the record, he opens the issue up for review. The record is then no longer limited solely to proof that the prosecutor has used his peremptory challenges to strike all black jurors from the defendant's jury panel, and the presumption

that the prosecutor has acted properly falls away. At that point, the court has a duty to satisfy itself that the prosecutor's challenges were based on constitutionally permissible trial-related considerations, and that the proffered reasons are genuine ones, and not merely a pretext for discrimination.

*Garrett,* 815 F.2d at 511. Thus, although under *Swain* the prosecutor has no duty to justify his reasons for striking a juror or jurors, when he elects to do so he is no longer " 'cloaked by the presumption of correctness' " and the court is permitted to review his motives " 'to determine whether "the purposes of the peremptory challenge are being perverted." ' " *Id.* at 513 (quoting *Weathersby v. Morris,* 708 F.2d 1493, 1496 (9th Cir.1983) ((quoting *Swain,* 380 U.S. at 224, 85 S.Ct. at 838), *cert. denied,* 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984))).

After Ford's counsel moved to quash the jury panel because the prosecutor was systematically excluding black venirepersons based on race, the prosecutor proffered his reasons for striking the two black alternate jurors. The trial court then denied Ford's motion to quash the panel. However, thereafter the prosecutor gave explanations for striking the other three black venirepersons. Therefore, the prosecutor's stated reasons for striking each black venireperson are a part of the record, and accordingly, the district court and we may determine whether the asserted reasons were bona fide trial-related reasons or a mere pretext for racial discrimination.

After a careful reading, we, like the district court, conclude that the prosecutor's

---

**6.** The State makes much of the fact that in *United States v. Carter,* 528 F.2d 844, 850 (8th Cir.1975), *cert. denied,* 425 U.S. 961 (1976), we held that the defendant failed to meet *Swain*'s high proof standard because the record contained only 13 cases available for analysis and in one-half of these cases a black juror was seated. The State argues that in this case only 10 cases possess a record sufficiently clear for evaluation and that in 6 of these cases, 16 blacks were seated as jurors; thus, under *Carter,* Ford's *Swain* claim must fail. We find *Carter* readily distinguishable because in addition to the statistical evidence, Ford has submitted extensive proof by way of the

affidavits and testimony from local attorneys recounted above.

We likewise reject as unpersuasive the State's argument that we cannot rely on the *Miller* record in determining whether the prosecutor systematically excluded black jurors because Miller and Ford were tried in different counties (Miller was tried in Crittenden County and Ford was tried in Mississippi County). We find dispositive that the two counties in which Miller and Ford were tried are part of the same Arkansas judicial district, *see Miller,* 65 F.3d at 681, that the prosecutor in this case served both counties, and most importantly, that the same prosecutor prosecuted both cases.

proffered reasons for striking Juror Billips and Juror Talley were mere pretexts for racial discrimination. The prosecutor's stated rationale for striking Juror Billips was that he was illiterate. However, the prosecutor's voir dire exchange with Juror Billips certainly offers nothing to support this reason.[7] The only conceivable reference in the record to Juror Billips' literacy came when Juror Billips answered a question from Ford's counsel concerning whether he had prior knowledge of the facts of the case. Juror Billips responded that "[o]f course, I watch TV but I don't—I don't read the paper or nothing because I want to be—." (Trial Tr. at 431.)

Certainly, in selecting a jury, the prosecutor was entitled to rely on information elicited by Ford's counsel. *Garrett v. Morris*, 815 F.2d at 513. However, the only plausible interpretation to be accorded Juror Billips' above quoted statement was that he had not read anything in the newspaper about the facts of the Ford case. We are unable to discern how the prosecutor could conclude from this statement that Juror Billips was illiterate. Indeed, Juror Billips' unhesitating and unqualified responses concerning whether he was in favor of the death penalty and could impose it in the appropriate case would suggest, if anything, an attitude favorable to the prosecution. There is simply no evidence in the record to support the prosecutor's proffered reason for striking Juror Billips. Nor does this record fairly support the state trial judge's conclusory comment that be-

cause Juror Billips had read nothing in the newspapers about the case he could not read. Because Juror Billips' answer to the question from Ford's counsel as to why he did not read the paper was cut off, it was sheer speculation to conclude that Juror Billips could not read. The State's inability to point to anything in the record to support the prosecutor's stated rationale, relegating the State to simply arguing that Juror Billips was struck for race-neutral reasons because the trial court said so, reveals the transparency of the prosecutor's proffered reason.

■ We likewise conclude that the prosecutor's explanation for striking Juror Talley was pretextual. The prosecutor stated that he struck her because he "felt she was not strong on the issue of the death penalty." (Trial Tr. at 670.) Again, however, the record undermines this explanation:

> PROSECUTOR: Mrs. Talley, you have indicated to the Court that you don't have any fixed opinions, moral beliefs or scruples in opposition to the death penalty; is that correct?
>
> JUROR TALLEY: Yes, sir.
>
> PROSECUTOR: All right. I take it then, ma'am, that you are telling me that you could and would impose the death penalty in a proper case and that you would have no objection against the death penalty if you felt it was warranted by the circumstances?
>
> JUROR TALLEY: Yes, sir.

---

7. The voir dire exchange went as follows:

> PROSECUTOR: Mr. Billips, sir. I've noticed you being responsive on some of the questions of the others and particularly on the death penalty. I think you gave me two different responses. How do you feel about the death penalty, sir?
>
> JUROR BILLIPS: I'm the same way.
>
> PROSECUTOR: All right, how is that, sir? Are you for it or against it?
>
> JUROR BILLIPS: I'm for it.
>
> PROSECUTOR: You are for the death penalty in a proper case.
>
> JUROR BILLIPS: Yes, sir.
>
> PROSECUTOR: All right, sir. Do you have any opinions or beliefs in opposition of the death penalty at all?
>
> JUROR BILLIPS: No.
>
> PROSECUTOR: I take it what you are telling me is you can listen very carefully to the

evidence that comes from this witness stand and not what I say or somebody says but what the witnesses say and render an opinion as to guilt or innocence in the case and that you will consider what they have to say as going to the punishment?

> JUROR BILLIPS: Yes, sir.
>
> PROSECUTOR: All right, sir. And Mr. Billips, I notice you are eighty-two years of age. You can ask to be excused from this jury if you don't feel like serving or don't want to serve. Do you have such a feeling?
>
> JUROR BILLIPS: No, I ain't tired.
>
> PROSECUTOR: I think that answers my questions pretty good. You could stay with us four or five days if it takes it then?
>
> JUROR BILLIPS: Yes, sir.

(Trial Tr. at 339–40.)

(Trial Tr. at 333–34.) We cannot understand how the prosecutor, from this record, could conclude that Talley was not strong on the death penalty. Again, the record is entirely devoid of evidence to support the prosecutor's proffered reason. Moreover, Juror Talley's unqualified answers to the prosecutor's questions concerning the death penalty are much stronger than responses given by several other white jurors that the prosecutor chose not to strike.[8] A prosecutor's failure to apply a stated reason for striking black jurors to similarly situated white jurors may evince a pretext for excluding jurors solely on the basis of race, in violation of *Swain.* *See Walton v. Caspari,* 916 F.2d 1352, 1361–62 (8th Cir.1990) (finding *Swain* violation where prosecutor "failed to exclude several white venirepersons who possessed the same allegedly objectionable characteristics as the excluded African–American venirepersons"), *cert. denied,* 499 U.S. 931, 111 S.Ct. 1337, 113 L.Ed.2d 268 (1991); *Garrett,* 815 F.2d at 513–14 (prosecutor's stated reason for striking three black jurors based on lack of education found pretextual where all three had high school education and one near completion in college while only two jurors remaining on panel had graduated from college and two white jurors remaining on panel had not completed high school).

The State acknowledges that Talley unhesitatingly indicated that she was capable of imposing the death penalty but observes that the prosecutor stated on the record that he observed the individual juror's reactions when the prosecutor informed the trial court of its intent to seek the death penalty. From this, the State contends that "Talley's reaction could very well have contributed to [the prosecutor]'s conclusion that Talley was not strong on the death penalty." (Appellant's Br. at 23.) The shortcoming to this argument is that there is no evidence of how Talley reacted when the prosecutor stated his intent to pursue the death penalty in this case, and there is likewise no evidence that he struck her because of her reaction.

■ Ordinarily, given the trial court's proximity, we afford great deference to its determination that a peremptory strike was made for race-neutral reasons, which is a purely factual issue. *Hernandez v. New York,* 500 U.S. 352, 364, 111 S.Ct. 1859, 1868–69, 114 L.Ed.2d 395 (1991). Moreover, in a 28 U.S.C. § 2254 habeas case, state court findings of fact are entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(d)(8). In this case, however, the record simply offers no support whatsoever for the prosecutor's stated reasons for striking Jurors Billips and Talley, and thus, in the context of all of the evidence, we conclude that the district court's findings that the prosecutor's stated reasons were pretexts for excluding the jurors on the basis of race are not clearly erroneous. Because the record also fails to

8. For instance, the following voir dire exchanges are illustrative:

PROSECUTOR: All right, Mr. Kelly, same question, sir, that I have asked the first six people selected in the jury. Do you have any opinions in opposition to the death penalty as a form of punishment by society?

JUROR KELLY: As far as—I don't think so.

PROSECUTOR: And I take it, Mr. Kelly, that you could and would based upon the evidence that you heard from the witness stand in a case that you felt to be proper consider the death penalty?

JUROR KELLY: Well, in certain circumstances, yes.

. . . .

PROSECUTOR: Mrs. Singleton, I know I am beginning to sound repetitive. Before this is over I am sure we will all be that way. The same question to you, ma'am. I want to get your individual response to it. Do you have any opinions in opposition to the death penalty, whatever they might be?

JUROR SINGLETON: No.

PROSECUTOR: The way you answered the question, you are thinking real hard about it, I take it. And I want you to. It is real important. Could you and would you in a proper case consider the imposition of the death penalty?

JUROR SINGLETON: I would consider it.

PROSECUTOR: All right. Recognizing that you do have an option in the case, would it be easier for you and would you be more inclined to impose life without parole than the death penalty irregardless [sic] of the facts in the case?

JUROR SINGLETON: It would depend on the facts. I would—

PROSECUTOR: [Interposing] You would consider the facts?

JUROR SINGLETON: I wouldn't automatically choose life without parole or automatically choose death.

(Trial Tr. at 335–37.)

support the state trial judge's fact-findings as to Jurors Billips and Talley, these findings are not entitled to the statutory presumption of correctness. "Despite the prosecutor's disclaimer of racial motives, it appears that he was in effect excluding blacks from the petit jury in this case in the belief that, as blacks, they were not qualified to serve as jurors in the trial of this black defendant." *Garrett v. Morris,* 815 F.2d at 514.

For the above reasons, we conclude that the prosecutor violated Ford's constitutional right to equal protection under the Fourteenth Amendment by exercising his peremptory strikes in a racially-discriminatory manner in violation of *Swain.*

## C.

■ At oral argument we raised the issue of whether a *Swain* violation is subject to harmless error analysis and instructed the parties to submit supplemental briefs on the issue, which they have done. Ford argues that selection of a jury in a racially discriminatory manner is a structural defect affecting the framework within which the trial proceeds and thus can never be subject to harmless error analysis. The State does not dispute this contention but merely reiterates its argument that Ford has failed to establish a *Swain* violation under the facts of this case. In any event, we agree with Ford that constitutional error involving racial discrimination in jury selection is not subject to harmless error analysis.

In *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), the Supreme Court held that a constitutional error does not always require reversal of a criminal conviction; rather, the standard for determining whether the conviction must be set aside is whether the constitutional error "was harmless beyond a reasonable doubt." In *Arizona v. Fulminante,* 499 U.S. 279, 307–10, 111 S.Ct. 1246, 1263–65, 113 L.Ed.2d 302 (1991), the Court outlined a distinction between constitutional errors which could properly be analyzed under the *Chapman* standard, "trial errors," and other constitutional errors which may not be subjected to harmless error analysis, "structural defects." "Trial error" was defined as "error which

occurred during the presentation of the case to the jury, and which therefore may be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* at 307–08, 111 S.Ct. at 1264. On the other hand, "structural defects" alter "[t]he entire conduct of the trial from beginning to end." *Id.* at 309, 111 S.Ct. at 1265. Examples of "structural defects" include "unlawful exclusion of members of the defendant's race from a grand jury," "the right to self-representation at trial," and "the right to public trial." *Id.* at 310, 111 S.Ct. at 1265.

> Each of these constitutional deprivations is a similar structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself. "Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair."

*Id.* (quoting *Rose v. Clark,* 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986)).

Several considerations lead us to conclude that a *Swain* violation is a "structural error" which is not amenable to harmless error analysis. As the *Fulminante* Court noted, the Court has previously held that the unlawful exclusion of black jurors from the grand jury based on race is a "structural error." 499 U.S. at 310, 111 S.Ct. at 1265. (citing *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986)). The *Vasquez* Court stated that "discrimination in the grand jury undermines the structural integrity of the criminal tribunal itself, and is not amenable to harmless error review." 474 U.S. at 263–64, 106 S.Ct. at 623. We find no meaningful analytic distinction between racial discrimination in composing the grand jury and racial discrimination in selecting the petit jury. Common sense dictates that claims involving selecting the petit jury, the body which determines a criminal defendant's guilt (and sometimes life expectancy), should stand on equal footing with claims involving composing the grand jury, the body

which determines whether to charge an individual with a crime.

Our conclusion is supported by language from *Batson v. Kentucky*, where the Court notes that "the basic principles prohibiting exclusion of persons from participation in jury service on account of their race 'are essentially the same for grand juries and for petit juries.'" 476 U.S. 79, 84 n. 3, 106 S.Ct. 1712, 1716 n. 3, 90 L.Ed.2d 69 (1986) (quoting *Alexander v. Louisiana*, 405 U.S. 625, 626 n. 3, 92 S.Ct. 1221, 1223 n. 3, 31 L.Ed.2d 536 (1972)). Additionally, we find language from *Powers v. Ohio*, 499 U.S. 400, 412, 111 S.Ct. 1364, 1371, 113 L.Ed.2d 411 (1991), lends support to our conclusion:

> A prosecutor's wrongful exclusion of a juror by a race-based peremptory challenge is a constitutional violation committed in open court at the outset of the proceedings. The overt wrong, often apparent to the entire jury panel, casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial of the cause. The *voir dire* phase of the trial represents the jurors' first introduction to the substantive factual and legal issues in a case. The influence of the *voir dire* process may persist through the whole course of the trial proceedings.

(internal quotation and citation omitted). The Court also stated that when jurors are excluded solely because of racial considerations, "the irregularity may pervade all the proceedings that follow." *Id.* at 412–13, 111 S.Ct. at 1372. We believe this language is a strong indication that the Supreme Court would hold that a constitutional error involving race-based exclusion of jurors infects the entire trial process itself and is hence a structural error.

Finally, one circuit has intimated that a *Batson* violation is not amenable to harmless error analysis, implying that it is a "structural defect." *See Rosa v. Peters*, 36 F.3d 625, 634 n. 17 (7th Cir.1994) (citing *Vasquez* and *Fulminante* and holding that *Batson* violation not "trial error" subject to harmless error analysis); *see also United States v. Canoy*, 38 F.3d 893, 899 n. 6 (7th Cir.1994) (noting that Supreme Court has suggested,

without explicitly holding, that *Batson* violation irreparably infects the entire trial such that harmless error analysis may not be appropriate); *Blair v. Armontrout*, 976 F.2d 1130, 1143 n. 2 (8th Cir.1992) (Heaney, J., dissenting) (citing *Vasquez* and positing that *Swain* violation can never be harmless error), *cert. denied,* —— U.S. ——, 113 S.Ct. 2357, 124 L.Ed.2d 265 (1993). *Batson* affirmed *Swain*'s central holding prohibiting racial discrimination in the selection of the jury and merely altered the standard of proof necessary to establish a constitutional violation, and we can conceive of no reason to subject these two tests to different treatment in this context.

Accordingly, we hold that a constitutional violation involving the selection of jurors in a racially discriminatory manner is a "structural defect" in the trial mechanism which cannot be subjected to a harmless error analysis. It follows that the constitutional error in this case was not harmless, and Ford's conviction and sentence must be set aside.

### III.

For the reasons enumerated above, the order of the district court conditionally granting Ford's petition for a writ of habeas corpus is affirmed. It is hereby ordered that Ford be discharged from custody unless the State commences proceedings to retry him within such reasonable time as the district court may fix upon remand.