CAVANAGH, J.
(concurring in part and dissenting in part). I agree with the legal principles announced in parts 11(A) and 11(B) of the majority’s opinion.[1]1 write separately because I disagree with the majority’s reading of the record. I believe that an evenhanded reading of the record demonstrates that the trial court found that prospective jurors were excluded on the basis of *354 race in violation of Batson v Kentucky, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986), and its progeny. Further, I would hold that the trial court correctly made this determination under Batson’s three-step test.[2] Upon making this determination, however, the trial court reasoned that any Batson violation was cured by the eventual makeup of the jury because “the same number if not more” unchallenged African-American jurors remained on the panel that ultimately decided these cases. I would hold that the initial Batson violation was not cured by the eventual makeup of the jury and, thus, the trial court erred by continuing the proceedings in this manner. Accordingly, I would reverse the judgments of the Court of Appeals and remand these cases for new trials.
I. FACTUAL BACKGROUND
During jury selection, defendants raised objections to the prosecutor’s use of her peremptory challenges. On the first and second days of jury selection, the prosecutor exercised a total of four peremptory challenges. On the third day, the prosecutor exercised three more peremptory challenges. Of the seven challenges the prosecutor had exercised at that point, three were against African-American veniremembers, one male and two females. After the prosecutor exercised her *355 third challenge on day three, and after the court recessed for lunch, defense counsel raised a Batson objection.
Defense counsel argued that the prosecutor was excluding African-American veniremembers on the basis of race, specifically African-American males. The prosecutor responded by arguing that a pattern of discrimination was not present, noting that she struck four Caucasians and only three African-Americans. Moreover, the prosecutor argued, only one of the excluded African-Americans was male. While continuing to assert that the first step of Batson was not satisfied, the prosecutor also explained her reasons for excluding the African-Americans. The trial court found that Bat-son had not been violated at that point, stating:
But in this particular case and this particular matter, I do not see a pattern of the prosecution improperly excluding African American males, because they’ve only excluded one, or African American females where two have been excluded.
I think the reasons are acceptable. So I don’t see a problem there.
The trial court then recessed for lunch, and the veniremembers returned to the courtroom after the break.
When jury selection resumed, the prosecutor exercised peremptory challenges to exclude veniremembers Johnson, Bonner, and Jones. After the prosecutor sought to exclude veniremember Jones, defense counsel asked to approach the bench, and the trial court directed the veniremembers to leave the courtroom for a few minutes. Defense counsel objected to the exclusion of these three African-American females on Batson grounds. The trial court did not make any findings at this time; rather, the prosecutor argued that veniremember Bonner was excluded because she was closely *356 related to two people who have been convicted of first-degree murder, not because she was African-American. The prosecutor further asserted that veniremember Johnson was excluded because she had a close relative convicted of a drug charge and she was “hesitant in her demeanor.” Finally, the prosecutor explained that she excluded veniremember Jones because Jones had a child close to the age of the victim and Jones was a professional working person. The trial court then noted that veniremember Berg, a Caucasian female who was also a professional working person, was not challenged and excluded from service. The following exchange then occurred:
The Court: Just before we recessed for lunch, I thought that it was very clear that we didn’t have a problem here. But now I think we are getting veiy close to a sensitive issue.
I didn’t see a problem with—
[Counsel for Defendant Knight]: Miss Johnson, Your Honor.
The Court: —Christine Johnson. She was, actually her demeanor was soft and she seemed very forthright and honest. And I understand with Miss Bonner, I didn’t see any problems with that. But I was very surprised about Miss Johnson. I didn’t say anything because the defense didn’t object. So I didn’t object.
The same thing with Miss Jones. I do not see a reason other than — I mean, it seems to me for the prosecution to say, she has a daughter the same age as the victim, that would seem to work in the prosecution’s favor, just in terms of thinking in the jury selection. So I don’t accept that.
[The Prosecutor]: Your Honor,—
The Court: I do see that we are getting close, and there are, I don’t know two or three minority jurors left in this panel. So I think we are getting close to a serious issue here.
*357 I wish that somebody had said something about keeping Miss Jones and Miss Johnson. And then we address this matter because I probably would not have excused either one of them.
[The Prosecutor]: Under Batson ...[ [a] prosecutor has to explain peremptory challenges with a neutral reason.
As long as I come up with a neutral reason for their dismissal, I believe that that’s appropriate. And I given—

The Court: But the Court has to accept or reject whether the reason is neutral or not.

[The Prosecutor]: I understand.
The Court: And I’m not, I’m saying that I think we’re getting close to a sensitive issue here on Jones and Johnson. That’s all I’m saying. I’m making my record too.
The Court: We have to [be] realistic here. I really don’t want any problems with this case, especially along these lines.
I’m not satisfied with the prosecutor’s response as to potential juror Jones and Johnson. But I think they’ve already left.
I’m just saying, I let Jones and Johnson go without holding them, especially Jones. I guess I should have held her and I didn’t do that. I’ll take the fault for that. But from this point on let’s try to be careful with this jury selection. We are close to getting this jury selected. [Emphasis added.]
Defense counsel inquired whether Johnson and Jones could be located; however, these veniremembers had already left the building. The panel was then called *358 back into the courtroom, and jury selection was completed. At the end of selection, the trial court observed:
With the panel that we ended up with, I think that any Batson problems that may have been there have been cured.
We have the same number if not more jurors, African American female jurors on the panel as if we had kept Miss Christina Johnson and Miss Ruby Jones.
I don’t think either side ended up selecting this panel for any reason other than I think that these are the ones who will be the fair and impartial persons to hear and try this case.
In the end, the jury convicted defendant Knight of first-degree murder and codefendant Rice of first-degree murder and possession of a firearm during the commission of a felony.
II. ANALYSIS
I agree with the majority that this Court’s “task in resolving these cases is difficult, in large part, because of the trial judge’s failure to rigorously follow the Batson procedures and, more importantly, to clearly articulate her findings and conclusions on the record.” Ante at 349. On the basis of its reading of the voir dire transcripts, the majority concludes that the trial court did not, in fact, find a Batson violation and, thus, there is no error to complain of in these cases. With respect to veniremembers Johnson and Jones, I respectfully disagree and would conclude that the trial court believed that these veniremembers were excluded on the basis of race in violation of Batson. I am simply hard pressed to find anything in the record from which it can be fairly said that the trial court did not conclude that Johnson and Jones were excluded on the basis of race.
*359 On the third day of jury selection, and after the lunch recess, defense counsel raised a Batson challenge to the exclusion of veniremembers Johnson, Bonner, and Jones.[3] The trial court did not decide whether defendants satisfied Batson’s first step by making a prima facie showing of racial discrimination. Instead, the prosecutor volunteered her reasons for the exclusions and attempted to proffer race-neutral explanations for the peremptory challenges. After considering the proffered explanations, the trial court rejected them, stating “I don’t accept that,” and “I’m not satisfied with the prosecutor’s response as to potential juror Jones and Johnson.” I find the following exchange particularly illustrative:
*360 [The Prosecutor]: Under Batson ... , [a] prosecutor has to explain peremptory challenges with a neutral reason.
As long as I come up with a neutral reason for their dismissal, I believe that that’s appropriate. And I given—

The Court: But the Court has to accept or reject whether the reason is neutral or not.

The Prosecutor: I understand.
The Court: And I’m, not....
On the basis of my review of the record, the only conclusion that can be fairly drawn is that the trial court believed that veniremembers Johnson and Jones were improperly excluded from the jury pool on the basis of race. In my view, the trial court effectively saw itself deciding Batson’s third prong, and concluded that the prosecutor’s explanations were a pretext and, thus, purposeful discrimination had been demonstrated. This conclusion also finds record support where the trial court expressed regret for dismissing Johnson and Jones and not being able to reseat these prospective jurors.
Nor am I persuaded by the prosecutor’s argument that the trial court preliminarily concluded that Batson may have been violated, but ultimately concluded that no violation occurred.[4] While this argument may be plausible in some instances, this is not one of them. I believe that the trial court’s comments noting that any *361 Batson violation had been cured, and that “this panel” was not selected on racial grounds, did not alter the trial court’s conclusion that veniremembers Johnson and Jones were excluded on the basis of race. Stated differently, nothing in the record suggests that the trial court retracted its finding that Johnson and Jones were excluded in violation of Batson. While the record demonstrates that the trial court may have believed that “this panel” (the jury actually empaneled) was not subjected to discrimination and the trial court may have been concerned with the racial composition of the jury, the record clearly shows that the trial court also believed that excluded veniremembers Johnson and Jones were subjected to discrimination.
In sum, I would conclude that the record fairly reveals that the trial court found a Batson violation because it rejected the prosecutor’s proffered explanations and would have recalled Johnson and Jones to sit on the jury if they could have been located. An evenhanded reading of the record shows that the trial court never retreated from its finding that these veniremembers were excluded on the basis of race. I tend to agree with the majority and suspect that some of the trial court’s statements arguably stemmed from its desire to ensure a racially mixed jury and that such a desire is prohibited by Batson and its progeny.[5] Motivations aside, however, that does not change the fact that the *362 trial court concluded that Johnson and Jones were excluded on the basis of race. In other words, regardless of the trial court’s main goal, or the goal ascribed to it by the majority, the record clearly demonstrates that the trial court along the way also found that purposeful discrimination occurred in violation of Batson,[6] Because I conclude that the trial court found that Batson had been violated, the question becomes whether this determination was proper.
The prosecution argues that even if the trial court found a Batson violation, the proffered explanations were race-neutral and the trial court erred when it concluded that the reasons were a pretext. Accordingly, the prosecution is questioning the trial court’s resolution of Batson’s second and third steps.[7] Thus, I would, consistent with this Court’s stated approach, review de novo whether the prosecutor articulated a race-neutral explanation for the strike as a matter of law. United States v Uwaezhoke, 995 F2d 388, 392 (CA 3, 1993). Further, I would review for clear error the trial court’s determinations whether the race-neutral explanations *363 were a pretext and whether defendants proved purposeful discrimination, according the trial court’s findings high deference. Miller-El v Cockrell, 537 US 322, 340; 123 S Ct 1029; 154 L Ed 2d 931 (2003) {Miller-El I).
I agree with the prosecution that the proffered explanations for the peremptory challenges were facially valid under the Equal Protection Clause as a matter of law. The proponent of the peremptory challenge cannot satisfy his or her burden under Batson’s second step “by merely denying that he had a discriminatory motive or by merely affirming his good faith.” Purkett v Elem, 514 US 765, 769; 115 S Ct 1769; 131 L Ed 2d 834 (1995). Rather, the proponent of a strike “must give a ‘clear and reasonably specific’ explanation of his ‘legitimate reasons’ for exercising the challenges,” and the explanation must be “related to the particular case to be tried.” Batson, supra at 98 & n 20, quoting Texas Dep’t of Community Affairs v Burdine, 450 US 248, 258; 101 S Ct 1089; 67 L Ed 2d 207 (1981). “What it means by a ‘legitimate reason’ is not a reason that makes sense, but a reason that does not deny equal protection.” Purkett, supra at 769. In other words, the proffered reason does not always have to make perfect sense as long as the reason does not deny equal protection of the law. Here, the prosecutor’s explanations for excluding veniremembers Johnson and Jones were based on something other than their race. See Hernandez, supra at 360. Further, discriminatory intent was not necessarily inherent in the prosecutor’s explanations. Id. Thus, I believe that the prosecutor’s explanations were race-neutral ,as a matter of law, and the trial court properly proceeded to the third step of the Batson inquiry.
According high deference to the trial court’s findings, I cannot say under these circumstances that the trial court clearly erred under Batson’s third step when it *364 concluded that veniremembers Johnson and Jones had been excluded on the basis of race. Resolution of Bat-son’s third step largely hinges on the evaluation of credibility, and “evaluation of the prosecutor’s state of mind based on demeanor and credibility lies ‘peculiarly within a trial judge’s province.’ ” Miller-El I, supra at 339 (citation omitted). Here, the trial court rejected defendants’ Batson challenge that was lodged earlier in the day. After the lunch recess, however, the record reveals that the trial court became suspicious of the prosecutor’s method of exercising peremptory challenges. In light of defendants’ objection to the exclusion of veniremembers Johnson and Jones, and after observing the prosecutor’s demeanor and listening to the proffered reasons for the peremptory challenges, the trial court concluded that these veniremembers were excluded on the basis of race.
The trial court noted that one of the proffered reasons for excluding Jones (that she was a professional working person) applied with equal force to a Caucasian woman who the prosecutor did not attempt to peremptorily challenge. The prosecutor explained that she excluded veniremember Jones because Jones had a child close to thé age of the victim and Jones was a professional working person. The trial court then noted that veniremember Berg, a Caucasian female who was also a professional working person, was not challenged and excluded from service. See, e.g., Miller-El II, supra,_US_; 125 S Ct 2325; 162 L Ed 2d 214 (“If a prosecutor’s proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at Batson’s third step.”). Further, all three challenges exercised by the prosecutor after the recess were made against African-Americans. Thus, out of the ten peremptory challenges exercised by the *365 prosecutor, six were against African-Americans. While these facts alone certainly may not always justify a conclusion of purposeful discrimination in every case, the prosecutor’s rationales, coupled with her demeanor, could have affected the trial court’s credibility determination.[8] In light of the high degree of deference accorded to a trial court’s credibility assessment in the Batson arena, I cannot say the trial court clearly erred when it found that the prosecutor’s reasons for excluding veniremembers Johnson and Jones were a pretext. Thus, I would conclude that the trial court properly found that the prosecutor violated Batson when she excluded Johnson and Jones on the basis of their race.
In light of this conclusion, it must be determined whether, upon learning that Johnson and Jones could not be located, the trial court erred in proceeding in the manner that it did; namely, deciding that any Batson violation had been “cured” because the “same number if not more” of African-American jurors sat on defendants’ jury. I conclude that the trial court erred in proceeding in this fashion. Such an approach not only ignores the structural nature of a Batson violation, but directly conflicts with the propositions on which Batson and its progeny are based.
“Jury service is an exercise of responsible citizenship by all members of the community, including those who *366 otherwise might not have the opportunity to contribute to our civic life.” Powers v Ohio, 499 US 400, 402; 111 S Ct 1364; 113 L Ed 2d 411 (1991). Allowing racial discrimination in the jury-selection process to go unremedied “offends the dignity of persons and the integrity of the courts.” Id. Doing nothing is not an available remedy when a trial court is confronted with a recognizable Batson violation.[9]
Here, the trial court’s “same number if not more” or, stated differently, “no harm, no foul” approach does not comport with the principles of Batson and its progeny. *367 Not only does such an approach suggest that jurors are racially fungible, but it ignores the fact that veniremembers Johnson and Jones were excluded from the judicial process on the basis of race. When faced with an argument similar to the one advanced by the trial court to support its approach, the Sixth Circuit Court of Appeals rejected this argument and reasoned that “[w]here purposeful discrimination has occurred, to conclude that the subsequent selection of an African-American juror can somehow purge the taint of a prosecutor’s impermissible use of a peremptory strike to exclude a veniremember on the basis of race confounds the central teachings of Batson.” Lancaster v Adams, 324 F3d 423, 434 (CA 6, 2003). See also United States v Harris, 192 F3d 580, 587 (CA 6, 1999) (rejecting the proposition that the failure to exclude one member of a protected class is sufficient to insulate the unlawful exclusion of others); United States v Battle, 836 F2d 1084, 1086 (CA 8, 1987) (“We emphasize that under Batson, the striking of a single black juror for racial reasons violates the equal protection clause, even though other black jurors are seated, and even when there are valid reasons for the striking of some black jurors.”); United States v David, 803 F2d 1567, 1571 (CA 11, 1986). While a defendant does not have a right to a jury composed in whole or in part of persons of the defendant’s own race, the defendant “does have the right to be tried by a jury whose members are selected pursuant to non-discriminatory criteria.” Batson, supra at 85-86. In light of these principles, as well as more recent United States Supreme Court precedent, I believe that the trial court’s rationale was fundamentally defective. See, e.g., Powers, supra at 410-414.
Granted, the trial court was placed in a precarious situation because Johnson and Jones could not be located. Accordingly, the trial court could not have *368 disallowed the prosecutor’s challenges and resumed selection with Johnson and Jones reinstated on the venire.[10] Batson, supra at 99 n 24. However, the trial court could have discharged the venire and selected a new jury from a panel not associated with the case. Id.; see also ante at 348. Although inaction is not an option, the trial court failed to take any remedial action after finding a Batson violation. It was only by chance that the “same number if not more” of African-Americans ultimately served on defendants’ jury. But Batson is principally concerned with why certain veniremembers are excluded and requires remedial action if those veniremembers are excused on the basis of race. I reject the trial court’s rationale that the discrimination against veniremembers Johnson and Jones was somehow “cured” by the eventual makeup of the jury. Therefore, I would hold that the trial court erred when it did not take any action to remedy the Batson violation.
Because the trial court concluded that Johnson and Jones were purposefully excluded from the jury pool on the basis of race and the trial court erred by failing to remedy these Batson violations, I would conclude that this error is subject to automatic reversal. This Court has yet to formally decide the issue whether a Batson violation is structural error that defies harmless error analysis. Structural errors “are intrinsically harmful, without regard to their effect on the outcome, so as to require automatic reversal.” People v Duncan, 462 Mich *369 47, 51; 610 NW2d 551 (2000). In other words, structural errors affect the entire conduct of the trial from beginning to end, and these errors alter the framework within which the trial proceeds. Arizona v Fulminante, 499 US 279, 309-310; 111 S Ct 1246; 113 L Ed 2d 302 (1991).[11] In this regard, it must be observed that the United States Supreme Court has never suggested that the discriminatory exclusion of prospective jurors is subject to harmless error review. Indeed, my review of the Court’s precedent, as well as the decisions from the federal Courts of Appeals, compels the conclusion that the purposeful exclusion of a prospective juror on the basis of race is considered structural error and, thus, it defies harmless error analysis.
The United States Supreme Court has stressed that unlawful exclusions in violation of Batson taint the entire conduct of the trial. Indeed, “the effects of racial discrimination during voir dire ‘may persist through the whole course of the trial proceedings.’ ” Tankleff v Senkowski, 135 F3d 235, 248 (CA 2, 1998), quoting Powers, supra at 412. To this end, the United States Supreme Court has stated:
*370 A prosecutor’s wrongful exclusion of a juror by a race-based peremptory challenge is a constitutional violation committed in open court at the outset of the proceedings. The overt wrong, often apparent to the entire jury panel, casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial of the cause. [Powers, supra at 412.]
On the basis of this language, the Eight Circuit Court of Appeals has concluded that Powers “is a strong indication that the Supreme Court would hold that a constitutional error involving race-based exclusion of jurors infects the entire trial process itself and is hence a structural error.” Ford v Norris, 67 F3d 162, 171 (CA 8, 1995). Stated differently, unlawful exclusions on the basis of race are intrinsically harmful.
Further, the United States Supreme Court has also stressed the impact these exclusions have on the whole system. For example, the Court has observed that “[t]he exclusion of even one juror for impermissible reasons harms that juror and undermines public confidence in the fairness of the system.” J E B v Alabama, 511 US 127, 142 n 13; 114 S Ct 1419; 128 L Ed 2d 89 (1994). Accordingly, the United States Supreme Court has consistently reversed convictions without first determining whether the unlawful exclusion of potential jurors affected the trial’s outcome. See, e.g., Powers, supra at 416. The Court has also required automatic reversal where unlawful discrimination was shown in the selection of grand jurors. Vasquez, supra at 263-264; Rose v Mitchell, 443 US 545, 556; 99 S Ct 2993; 61 L Ed 2d 739 (1979). Because the Court emphasizes the impact these exclusions have on the judicial system and regularly subjects such error to automatic reversal, I believe that the Court would hold that a race-based exclusion of a prospective juror is structural error.
*371 The majority of federal Courts of Appeals that have examined this issue generally have reached the same result and have concluded that race-based exclusions are structural error not subject to harmless error analysis. See, e.g., Tankleff, supra at 248; Rosa v Peters, 36 F3d 625, 635 n 17 (CA 7, 1994); Davis v Secretary for Dep’t of Corrections, 341 F3d 1310, 1316-1317 (CA 11, 2003); United States v Angel, 355 F3d 462, 470-471 (CA 6, 2004); Williams v Woodford, 396 F3d 1059, 1069 (CA 9, 2005). I would join those jurisdictions and likewise conclude that the purposeful exclusion of a prospective juror on the basis of race is structural error. The United States Supreme Court has made it clear that the purposeful exclusion of a veniremember on the basis of race defies “harmless error” analysis and merits automatic reversal. Johnson v United States, 520 US 461, 468-469; 117 S Ct 1544; 137 L Ed 2d 718 (1997); J E B, supra at 142 n 13. Therefore, until the United States Supreme Court holds otherwise, if a reviewing court determines that a prospective juror was excluded from the jury pool on the basis of race, this is structural error subject to automatic reversal. Accordingly, because the trial court found that Batson had been violated but erred in not remedying the discrimination, defendant Knight and codefendant Rice are entitled to new trials.
in. CONCLUSION
A fair reading of the voir dire transcripts indicates the trial court found that veniremembers Johnson and Jones were excluded on the basis of race in violation of Batson and its progeny. I would hold that the trial court correctly determined that the principles of Batson had been violated. The prosecutor’s proffered explanations for the exclusions were race-neutral as a matter of law, and the trial court did not clearly err when it rejected *372 these explanations and determined that defendants had proved purposeful discrimination. However, I would hold that the purposeful exclusion of veniremembers Johnson and Jones on the basis of race was not cured by the eventual makeup of the jury and, thus, the trial court erred by continuing the proceedings without remedying the Batson violations. Thus, I would reverse the judgments of the Court of Appeals and remand these cases for new trials.
TAYLOE, C.J., and KELLY, J., concurred with CAVANAGH, J.

 Batson’s three-step process is as follows: (1) the opponent of the peremptory challenge must make a prima facie showing of discrimination; (2) if the trial court determines that a prima facie showing has been made, the burden shifts to the proponent of the peremptory challenge to articulate a race-neutral explanation for the strike; and (3) if the proponent provides a race-neutral explanation, the trial court must then determine whether the race-neutral explanation is a pretext and whether the opponent of the challenge has proved purposeful discrimination. Batson, supra at 96-98.

 This Batson challenge should not be confused with a similar objection defense counsel raised earlier that day. While the earlier objection provides some context for the later objection, I am concerned with the trial court’s treatment of the later Batson objection — i.e., the objection to the exclusion of veniremembers Johnson and Jones.
Moreover, the majority posits that defense counsel’s initial objection, as well as counsel’s other objections, demonstrates counsel’s misunderstanding of Batson. I disagree. Defense counsel initially asserted that the prosecutor had engaged in a pattern of systematically excluding African-American veniremembers. To establish a prima facie case of discrimination based on race under Batson’s first step, the opponent must show that (1) he or she is a member of a cognizable racial group; (2) the proponent has exercised a peremptory challenge to exclude a member of a certain racial group from the jury pool; and (3) all the relevant circumstances raise an inference that the proponent of the challenge excluded the prospective juror on the basis of race. Batson, supra at 96. A pattern of strikes against members of a certain racial group certainly constitutes a relevant circumstance. Indeed, as the Batson Court itself noted, “a ‘pattern’ of strikes against black jurors included in the particular venire might give rise to an inference of discrimination.” Id. at 97. Batson and its progeny do not require a pattern to be shown because the striking of even a single juror on the basis of race violates the Constitution. See, e.g., J E B v Alabama ex rel TB, 511 US 127, 142 n 13; 114 S Ct 1419; 128 L Ed 2d 89 (1994). However, a pattern of strikes against a particular racial group is still significant because it may give rise to an inference of discrimination. Thus, defense counsel’s remarks do not demonstrate his misunderstanding of Batson.

 The prosecutor directs this Court’s attention to the following comments by the trial court:
With the panel that we ended up with, I think that any Batson problems that may have been there have been cured.
We have the same number if not more jurors, African American female jurors on the panel as if we had kept Miss Christina Johnson and Miss Ruby Jones.
*361 I don’t think either side ended up selecting this panel for any reason other than I think that these are the ones who will be the fair and impartial persons to hear and try this case.
Notably, the majority relies heavily on this same passage for the proposition that no Batson error occurred at all.

 I disagree, however, with the majority’s reliance on a proposed court rule that may be adopted sometime in the future. See ante at 349 n 17 and 350. Instead, I prefer to simply examine this case under the constitu *362 tional concerns set forth in Batson and its progeny rather than rely on a proposed court rule that has not even taken effect.

 We should be mindful that our role is not to search for any plausible reason to avoid concluding that a trial court found that discrimination indeed occurred. See, e.g., Miller-El v Dretke,_US_; 125 S Ct 2317, 2332; 162 L Ed 2d 196, 221 (2005) (Miller-El II (If a prosecutor’s proffered reason for a peremptory challenge “does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false.”). Like the majority, I could imagine many reasons to explain away the lower court proceedings. But this would not change the fact that the trial court concluded that discrimination occurred in violation of Batson. Again, while the record is not a model of clarity, I simply cannot ignore or explain away the trial court’s conclusion.

 Appellate review oí Batson’s first step is not implicated in these cases. See Hernandez v New York, 500 US 352, 359; 111 S Ct 1859; 114 L Ed 2d 395 (1991) (plurality opinion).

 For example, in. Miller-El I, supra at 342-343, the United States Supreme Court noted that the prosecution’s reasons for striking African-American members of the venire appeared race-neutral in that case. However, the fact that the prosecutor used ten of the fourteen challenges to exclude African-Americans, and three of the prosecution’s race-neutral rationales for striking African-American veniremembers pertained just as well to some Caucasian veniremembers who were not challenged and who did serve on the jury, might suggest that the challenges were selective and based on racial considerations. See also Miller-El II, supra, _US_; 125 S Ct 2325; 162 L Ed 2d 214.

 The Batson Court made it clear that state courts are to be accorded wide latitude in fashioning a remedy in light of a violation. Batson, supra at 99 n 24. There are two well-accepted remedies available to a trial court in the event a Batson violation occurs. I believe that these remedies are worth mentioning. First, if a trial court determines that a party exercised a peremptory challenge on the basis of race in violation of Batson, the trial court can disallow the challenge and seat the challenged veniremember. Batson, supra at 99 n 24 (concluding that a trial court should “disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire”). See also State v Grim, 854 SW2d 403, 416 (Mo, 1993) (“[T]he proper remedy for discriminatory use of peremptory strikes is to quash the strikes and permit those members of the venire stricken for discriminatory reasons to sit on the jury if they otherwise would.”).
Second, if a trial court determines that the discrimination in the selection process is more pervasive, the court may discharge the entire venire and start the process anew. Batson, supra at 99 n 24 (concluding that the trial court may “discharge the venire and select a new jury from a panel not previously associated with the case”). See also State v McCollum, 334 NC 208, 236; 433 SE2d 144 (1993) (“As Batson violations will always occur at an early stage in the trial before any evidence has been introduced, the simpler, and we think clearly fairer, approach is to begin the jury selection anew with a new panel of prospective jurors who cannot have been affected by any prior Batson violation.”).
In sum, a trial court is under an affirmative duty to ensure that the constitutional mandates of Batson are respected. While there may be other options available to a trial court to remedy a Batson violation, permitting purposeful discrimination to stand without crafting a remedy is not an acceptable option.

 In this regard, the trial court observed that the veniremembers could not be located because they left the building. The record is unclear exactly what steps the trial court took to find Johnson and Jones. The trial court possibly could have done more to locate these veniremembers. And if these veniremembers were located, the trial court would have then had the option to reinstate Johnson and Jones on the venire.

 In Fulminante, supra at 310, the Court noted that some examples of structural defects involve the right to self-representation at trial, McKaskle v Wiggins, 465 US 168, 177 n 8; 104 S Ct 944; 79 L Ed 2d 122 (1984), and the right to a public trial, Waller v Georgia, 467 US 39, 49 n 9; 104 S Ct 2210; 81 L Ed 2d 31 (1984). Notably, the United States Supreme Court also observed that the unlawful exclusion of members of the defendant’s race from a grand jury was a structural defect not subject to harmless error analysis. Fulminante, supra at 310, citing Vasquez v Hillery, 474 US 254; 106 S Ct 617; 88 L Ed 2d 598 (1986). More recently, in Neder v United States, 527 US 1, 8; 119 S Ct 1827; 144 L Ed 2d 35 (1999), the Court again cited Vasquez for the proposition that racial discrimination in the selection of grand jurors is structural error subject to automatic reversal. While the precedential value of this proposition has been questioned because Justice White did not join this portion of the Vasquez opinion, the United States Supreme Court itself has cited Vasquez with approval on this proposition.